Eric Abraham, Esq. (026551995)
William P. Murtha, Esq (042872019)
**HILL WALLACK LLP**
21 Roszel Road
Princeton, New Jersey 08540
(609) 734-4447
eabraham@hillwallack.com

*Attorneys for Plaintiff*
*Cambridge Mobile Telematics, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CAMBRIDGE MOBILE TELEMATICS, INC., | : | |
| | : | |
| *Plaintiff*, | : | C.A. NO. _____ |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| SFARA, INC., | : | |
| | : | |
| *Defendant*. | : | |

## CAMBRIDGE MOBILE TELEMATICS INC.'S
## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cambridge Mobile Telematics, Inc. ("CMT") alleges in this Complaint for patent infringement against Defendant Sfara, Inc. ("Sfara") as follows:

## NATURE OF THE ACTION

1.     This is an action for infringement of U.S. Patents Nos. 11,587,368 (the "'368 patent") and 10,246,037 (the "'037 patent"), (collectively, the "Asserted Patents").  This action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. Section 271.

## THE PARTIES

2.      CMT is a Delaware corporation with its principal place of business at 314 Main Street, Suite 1200, Cambridge, MA 02142.

3.      CMT is a pioneering innovator in the field of telematics and a global provider of telematics.  CMT's AI-driven platform, DriveWell®, gathers sensor data from millions of sensor-equipped IoT devices—including smartphones, proprietary Tags, connected vehicles, dashcams, and third-party devices—and fuses them together with optional contextual data to create a unified view of vehicle and driver behavior.  CMT's customers include numerous companies in a wide-range of industries, including personal and commercial auto insurance, automotive, rideshare, personal safety, wireless, and financial services industries.  CMT's customers use insights from CMT's DriveWell® platform to power their risk assessment, safety, crash assistance, insurance claims, and driver improvement programs.  CMT serves millions of people through 95 programs in 25 countries, including many of the top auto insurers in the United States.

4.      Sfara is a Delaware corporation with its principal place of business at 221 River Street, 9th Floor, Hoboken, NJ 07030.

5.      Sfara directly competes with CMT in the telematics industry.  Sfara makes, uses, sells, offers to sell, exports, and/or imports in the United States products, services, and/or components that have been and are used to infringe one or more claims of the Asserted Patents.  As described herein, Sfara actively induces infringement of the Asserted Patents by others and contributes to the infringement of the Asserted Patents by others, either literally or under the doctrine of equivalents.

## JURISDICTION AND VENUE

6.      CMT incorporates the foregoing paragraphs of the Complaint by reference as if fully set for herein.

7.      This civil action for patent infringement arises under the patent laws of the United States, 35 U.S.C. Section 1 *et seq*., including under 35 U.S.C. Section 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1338(a).

8.      This Court has personal jurisdiction over Defendant Sfara at least because its headquarters is in New Jersey, it is a resident of and/or has regularly conducted business activities in this District, it has committed infringing activities in this District, and/or it has placed products, systems, and/or services that infringe the Asserted Patents in the stream of commerce with the knowledge and intent that they would be used, offered for sale, and/or sold in this District.

9.      Venue is proper in this District pursuant to 28 U.S.C. Sections 1391(b) and (c) and/or 28 U.S.C. Section 1400(b) because Sfara is headquartered in New Jersey and thus has committed acts of infringement and has a regular and established place of business in this District.

## BACKGROUND

10.     CMT incorporates the foregoing paragraphs of the Complaint by reference as if fully set for herein.

### A.      CMT Developed and Commercialized its Groundbreaking Telematics Technology

11.     CMT is a global leader in mobile telematics and analytics.  Founded by Massachusetts Institute of Technology ("MIT") professors Hari Balakrishnan and Sam Madden, together with Bill Powers, CMT grew out of the MIT CarTel project that started in 2004.  CarTel itself derived from a 2001 location-based computing project called Scalable Location-Aware Monitoring Systems ("SLAM").  As leaders of the CarTel project, Drs. Balakrishnan and Madden

developed a mobile sensing system to collect and draw inferences from sensor data on mobile devices.  In the following years, Drs. Balakrishnan and Madden partnered with Boston-area taxi companies to accurately measure traffic surface conditions and traffic using novel, award-winning methods for mobile telematics.  This research, which forms the basis of CMT's technology, won multiple "best paper" and "test of time" awards from the top research conferences in Computer Science.

12.     One of CMT's award-winning programs is the DriveWell® platform, a complete mobile telematics and analytics solution for extracting actionable insights on driving behaviors.  CMT's DriveWell® platform combines mobile sensing, telematics processing, and behavioral analytics to accurately and efficiently measure driver behavior and vehicle dynamics, score driving, and detect crashes.  CMT has been awarded multiple patents directed to this technology.

13.     In June 2021, CMT's affiliate, CMT TM Holdings, LLC, acquired TrueMotion, Inc. ("TrueMotion"), which provided its own smartphone driving data platform.  Powered by machine learning, the TrueMotion platform uses mobile phone sensor data to determine when a person is driving, reveal their behaviors behind the wheel, and detect crashes.  As part of the acquisition, CMT acquired TrueMotion's smartphone-based driving data platform.

14.     As part of the acquisition of TrueMotion, TrueMotion assigned all rights, title, and interest in its worldwide patent portfolio to CMT.  CMT holds all substantial rights, title, and interest in the patents and patent applications previously assigned to TrueMotion and holds the sole and exclusive right to sue and recover damages for infringement thereof.

**B.     The Patents-In-Suit**

15.     CMT is the owner by assignment of the following U.S. patents (the "Asserted Patents"):

(a)     U.S. Patent No. 11,587,368, entitled "Method and System for Accident Detection Using Contextual Data" (**Exhibit 1**); and

(b)     U.S. Patent No. 10,246,037, entitled "Vehicle Telematics of Vehicle Crashes" (**Exhibit 2**).

### 1.    The '368 Patent

16.    A true and correct copy of the '368 patent is attached as **Exhibit 1**. The '368 patent generally relates to systems and methods for reporting accident data, including, *inter alia*, "the collection and reporting of driving data using, for example, a mobile phone or other network connected computing device." '368 patent at 1:36-38.

17.    The '368 patent was duly and legally issued on February 21, 2023, by the USPTO. U.S. Application No. 17/166,998, which issued as the '368 patent, claims the benefit of Provisional Application No. 62/541,615, filed on August 4, 2017, and Provisional Application No. 62/645,653, filed on March 20, 2018. Brad Cordova, Rafi Finegold, Dan Shiebler, and Eddie Vaisman are the named inventors of the '368 patent.

18.    CMT owns all substantial rights, title, and interest in the '368 patent, and holds the sole and exclusive right to sue and recover damages for infringement thereof, including past infringement. TrueMotion assigned U.S. Application No. 17/166,998 (the "'998 Application") to CMT on October 15, 2021. A true and correct copy of the assignment abstract assigning the '998 Application and, thus, the '368 patent from TrueMotion to CMT is attached as **Exhibit 3**.

19.    The claims of the '368 patent are valid and enforceable.

20.    Prior to the invention of the '368 patent, existing systems collecting data related to drivers and their driving behavior using external and mobile devices were not optimized to report specific driving data associated with vehicle incidents and insurance claims. *See* '368 patent at 1:16-31. Because of these shortcomings, there was a need in the art to create "improved methods and systems related to reporting specific trip driving behavior data associated with vehicle

incidents and insurance claims." *Id.* at 1:28-31.  The invention of the '368 patent solves the problems of the prior art by providing "systems that reduce the amount of time necessary to report and process insurance claims. . . . [and] provide additional data and information with a submitted accident report that enables an adjuster to more accurately analyze events surrounding the accident." *Id.* at 3:49-55.  The inventions disclosed by the '368 patent use, for example, a mobile device carried by the user that includes sensors such as a GPS receiver, accelerometer, and gyroscope to record driving data. *See, e.g.*, *id.* at 4:37-39.  The system can use this data to break down vehicle movement into trips and allow users to submit claims based on those trips to be sent directly to the insurance company (e.g., a server) via a wireless network.  The '368 patent describes some uses of the driving data:

> Generally, driving data collected during the trip during which the accident occurred, such as speed or attentiveness, has not been available to a claims adjuster and could not be sent (e.g., immediately) by the insured.  The driving data can be used in one or more steps ( e.g., each step) of the claims process.  At the first notice of loss stage, the driving data can assist with determining location information, drivability, and emergency services.  At the investigation stage, the driving data can be used to [sic] for fraud detection, liability determination, and low-impact injury assessment.  At the appraisal/valuation stage, the driving data provides, for example additional information to assess total loss and damage to impact areas in submitted photos.  At the negotiation/settlement stage, the additional driving data can be used to automate the processing of some claims and facilitate a faster, mobile payment of others.  Finally, in a multi-party accident, the driving data can enhance accident modeling, assist with liability assessment, and provide legally admissible accident scene data.

*Id.* at 9:41-59.  The system can also detect "distracted driving behaviors," such as "holding the mobile device to the ear or in a position to be viewed, interacting with the mobile device, etc." *Id.* at 11:27-36.  The system can allow an adjuster to determine if a claimant is lying, for example, "if the driver reports that the accident occurred because of failure of another vehicle to yield, however, the acceleration associated with the accident occurred on a freeway a significant distance from an

on ramp or off ramp, this may indicate a discrepancy between the driver's report and the driving data." *Id.* at 11:60-65.  This access to data that has not been available to adjusters allows them to, for example, "make a preliminary liability determination based on the driving behavior and driving events identified from the driving data," use "crash context to . . . judge the claims of third parties," and "be able to pay claims and detect fraud with greater accuracy and speed." *Id*. at 12:26-33.  For example, the sensors can detect an extreme activity and subsequent activities like an extreme braking activity followed by whether the driver got out and walked around after such an event. *See, e.g.*, *id.* at 13:51-56.  The inventions disclosed in the '368 patent can also automatically generate a textual narrative that describes the events in a specified timeframe, for example, five minutes before to five minutes after a detected crash.

21.     The '368 patent discloses numerous benefits of the invention disclosed therein over the prior art, including being able to automatically collect driving data including location, braking, driver behavior, weather, etc., and use the data to submit a claim.  The data can then be transmitted over a network to a remote server and stored in a database.  This allows experts to recreate a crash using data that would otherwise not exist and that is more accurate than the data that they could have collected with what evidence remained after a crash.  The system also allows the data and analyses to be shared in various methods, including via system generated description of the events of the crash based on the data and analyses.

22.     Therefore, a person of ordinary skill in the art would recognize that the inventions claimed in the '368 patent are not directed to an abstract idea.

23.     The claimed inventions, when considered individually and as a whole, provide an inventive concept, especially when compared to the prior art systems.

### 2.    The '037 Patent

24.     A true and correct copy of the '037 patent is attached as **Exhibit 2**.  The '037 patent generally relates to the automatic generation of a human-readable documentation of the vehicle crash based on one or more metrics determined from the telematics data associated with the vehicle.  *See, e.g.*, '037 patent at 1:26-30.

25.     The '037 patent was duly and legally issued on April 2, 2019, by the USPTO.  U.S. Application No. 16/035,861, which issued as the '037 patent, was filed July 16, 2018.  Kimberly Shea, Geronimo Mirano, Jun-geun Park, and William Bradley are the named inventors of the '037 patent.

26.     CMT owns all substantial rights, title, and interest in the '037 patent, and holds the sole and exclusive right to sue and recover damages for infringement thereof, including past infringement.  The '037 patent is assigned to CMT on its face.

27.     The claims of the '037 patent are valid and enforceable.

28.     Prior to the invention of the '037 patent, experts would have to reconstruct crashes after they happened using measurements taken after the same.  *See* '037 patent at 1:10-12. "Reconstruction and understanding the details of a crash after the fact is difficult, time-consuming, and often inaccurate."  *Id.* at 1:12-14.  Because of these shortcomings, there was a need in the art to "collect vehicle motion data before, during, and after the crash," and to document, store, and transmit this data to the relevant party automatically.  *Id.* at 1:15-16, 1:20-30.  The invention of the '037 patent solves the problems of the prior art by providing a system for automatically re-creating and documenting crashes by using, for example, an internet-enabled device equipped with an application and tools (e.g., an accelerometer, a GPS receiver, a gyroscope, and a barometer) to, among other things, collect data about the location of the crash, activities of the driver before during and after the crash, whether the airbags deployed, and where the car came in contact with

another object.  The invention of the '037 patent can use the data it collects to "identify and label driver state or behavior, such as continued driving, braking or accelerating or both before impact, swerving, evasive maneuvering, [and] walking after the vehicle crash period."  *Id.* at 16:41-44. The system can also detect multiple impacts, collect the data described above in relation to those multiple impacts, determine whether the driver was on the phone on or about the time of the crash, and whether the sun was facing the driver at the time of the crash, among other things.  The inventions can even calculate the severity of a crash.  *See, e.g.*, *id.* at 17:56-57.  The collected telematics data can be transmitted to a central server via the internet (or other means) and stored to be used in a number of different ways, including by experts to reconstruct the crash.  *See, e.g.*, i*d.* at 6:9-18.

29.     The '037 patent discloses numerous benefits of the invention disclosed therein over the prior art, including being able to automatically collect a wide array of telematics data including "crash duration, a number of impacts, a mean acceleration, a yaw during the vehicle crash, a direction of vehicle impact, an indication of airbag deployment, an indication of vehicle rollover, an indication of a vehicle maneuver, an indication of whether the vehicle was driven post-crash, and an indication of environmental conditions during the vehicle crash," among other data.  *Id.* at 2:35-41.  The data can then be transmitted over a network to a remote server and stored in a database.  This allows experts to recreate a crash using data that would otherwise not exist and that is more accurate than the data that they could have collected with what evidence remained after a crash.  The system also allows the data and analyses to be shared in various methods, including via system generated prose describing the events of the crash based on the data and analyses. Before the inventions of the '037 patent, experts had to attempt to "reconstruct a crash using measurements taken at the crash site after the crash" which "is difficult, time-consuming, and often

inaccurate." *Id.* at 1:10-14.  For example, external happenings after a crash, such as a weather event or other drivers, may cause evidence pertinent to reconstruction the crash to be moved, lost, or otherwise destroyed.  The inventions of the '037 patent allow experts to reconstruct the crash despite such external happenings.

30.     Therefore, a person of ordinary skill in the art would recognize that the inventions claimed in the '037 patent are not directed to an abstract idea.

31.     The claimed inventions, when considered individually and as a whole, provide an inventive concept, especially when compared to the prior art systems.

### C.     Sfara's Infringing Products

32.     Like CMT's telematics platform, Sfara's telematics platform, including without limitation Sfara Quest ("Brainy Tester") platform, Sfara Guardian Personal Safety, Sfara Fleet Companion, Sfara Companion Mobile Safety, Sfara's API, Sfara's SDK, Sfara's cloud platform, and related products and services (collectively, "Sfara's telematics platform" or the "Sfara Apps"), uses mobile phone sensor data, is powered by machine learning, determines when a person is driving, reveals their behaviors behind the wheel, and detects crashes.  *See Sfara's Core Services: We constantly test the efficiency of our core services on our autonomous vehicle proving ground and in NHTSA-certified facilities*, https://www.sfara.com/products/ (accessed Feb 14, 2023).

**We designed and developed our innovations to uncompromising standards in order to accelerate industry-leading services to our partners, with patent-protected technologies.**

### Event Driven Detections

**Crash Detection**

Detecting a crash event, especially at ultra-low speeds, is realized through our patented on-device AI that can analyze sensor data and quickly communicate impact details, severities and confidence.

**Intelligent Collision Data**

Empowers a range of possible solutions, including claims management, accident reconstruction and fraud detection.

**Trip and Driving Data for UBI**

Detects a wide range of driving behaviors, such as Hard Braking, Rapid Acceleration and contextual Phone Handling and Speeding, which can be used to understand risk and measurably drive it down.

### Personal Safety

**TripleTap, Check-In, SOS**

Sfara's advanced personal safety solutions offer three distinct ways to get help when the situation doesn't feel right. Triple-Tap the device and a Safety Coordinator will call the user. Schedule a Check-in Call from the Coordinator if the timer runs out. Or, swipe a manual SOS.

### Integrated Suppression Framework

**Industry-leading False Positive Suppression**

Dismissing a potential impact, especially at low speeds, requires a momentary data and situational awareness. This is why Sfara has developed several leading-edge technologies including self diagnostics, intelligent trip start/end, mode of transportation detection and deterministic physics modeling that force multiply each other to create a powerful false positive suppression technology (see below).

*Id.*

33.     Sfara created mobile SDKs for use on Android and iOS platforms that are deployed on drivers' smartphones.  Smartphones include processors.  Moreover, Sfara's platform is "a highly scalable cloud-based data analytics and assurance solution . . . ."  Sfara, *A Paradigm Shift in Global Fleet and Supply Chain Safety: Introducing a Comprehensive Safety and Compliance Solution Designed to Protect and Respect Drivers* (March 5, 2019), https://www.sfara.com/a-paradigm-shift-in-global-fleet-and-supply-chain-safety-introducing-a-comprehensive-safety-and-compliance-solution-designed-to-protect-and-respect-drivers/.  Sfara's applications ("apps") that run on mobile phones (both Apple and Android) include Sfara Quest (also known as "Brainy Tester"), Sfara Guardian Personal Safety, Sfara Fleet Companion, and Companion Mobile Safety.

These apps all run on mobile phones that include processors and collect data including sensor data and location information that is gathered from the user's phone and stored. For example, Sfara Fleet Companion App is available on Android and Apple iOS. https://apptopia.com/google-play/app/com.sfara.fleet/about (accessed January 24, 2023); https://apptopia.com/ios/app/1023344411/about (accessed January 24, 2023).



https://apptopia.com/google-play/app/com.sfara.fleet/about (accessed January 24, 2023); https://apptopia.com/ios/app/1023344411/about (accessed January 24, 2023).

34.    The Sfara Apps and platform include a processor executing instructions for receiving telematics data produced by one or more sensors associated with a telematics device at the vehicle, the sensors including at least one of an accelerometer, a speedometer, a barometer, a gyroscope, a compass, and a position sensor. For example, the Brainy Tester app collects sensor information. "The App collects sensor information from a range of your smartphone sensors only during a task. If anyone of the below listed sensors is not physically present in your device, the specific sensor information from this sensor will be omitted in the data upload to Sfara. The following sensor information will be recorded during a task and uploaded in file form to Sfara post task completion: 1. Accelerometer 2. Gyroscopic sensor 3. Magneto metric sensor 4. Barometric pressure sensor." https://www.sfara.com/brainy/ (accessed January 24, 2023). Moreover, Sfara

Companion uses mobile phone sensors to detect at-risk driving behaviors and crashes.  Sfara, *How Companion Mobile Safety works to protect your people*, https://companionmobilesafety.com/how-it-works/ (accessed October 25, 2022); *see also* Sfara, *Triggered Training Overview* (April 1, 2022), https://vimeo.com/694961881.



Sfara, *Triggered Training Overview* (April 1, 2022), https://vimeo.com/694961881.

35.    On information and belief, the Sfara Apps are designed to provide notices of crashes simultaneously to service providers to notify them of a First-Notice-of-Loss ("FNOL"). Notices of crashes include information such as time, location, and other narrative events.

36.    "Compatible with over 4 billion smartphones in the market today, Sfara's safety services are available as a standalone app or as an SDK to integrate into any brand's app, such as was recently done by Mercedes-Benz and Mentor by eDriving."  Sfara, *Introducing world's first global safety, telematics and FNOL platform that is hardware-free, by Sfara* (October 1, 2021), https://www.sfara.com/introducing-worlds-first-global-safety-telematics-and-fnol-platform-that-is-hardware-free-by-sfara/.

37.     "The App collects information about the precise geographic location of your device only during a task.  If your device is equipped with GPS or can connect with wireless access points or hot spots, or if your device is also a phone that communicates with cell towers or satellites, then your device is able to use these features to determine its precise geographic location and transmit it to us."  https://www.sfara.com/brainy/ (accessed January 24, 2023).

38.     "The [Brainy] App will use your phones [sic] GPS sensor and other locator capabilities to record and share your device's precise location with Sfara only during a task, as further described in Section 1 below."  https://www.sfara.com/brainy/ (accessed January 24, 2023).

39.     Sfara's technology recognizes that, during a crash, a smartphone will not stay static, but will likely move around.

> Which also causes those phones to often go flying, in no predictable patterns.  Now imagine yourself developing for those diverse conditions an algorithm that determines if a vehicular crash has occurred while the phones are still flying through the air, much less after they landed.  You need to determine if it was indeed a crash, or a hit curb, or a slammed brake.  These are some of the many challenges of developing a world class crash detection algorithm for mobile phones.  Sfara's crash detection algorithm is divided into two segments, which we'll explore over the course of this week.  For now, we're focused on the first segment, which uses Machine Learning (ML) to assist with detection.

Sfara, *Crash Week Topic: During a crash, phones don't fly in predictable patterns* (August 15, 2022),  https://www.sfara.com/de/crash-week-topic-during-a-crash-phones-dont-fly-in-predictable-patterns/.

40.     On information and belief, Sfara instructs or otherwise encourages others, including Sfara's customers and end users, to purchase and use Sfara's telematics platform.

41.     Through the making, using, selling, offering for sale and/or importing of Sfara's telematics platform, Sfara has and continues to directly infringe, contributorily infringe, and/or

induce the infringement, either literally or under the doctrine of equivalents, of the Asserted Patents.

42.     Sfara's telematics platform is Sfara's flagship product and, on information and belief, is the primary contributor of Sfara's historical revenue.

43.     Sfara has been on notice of its infringement of the Asserted Patents since at least as early as the filing of this Complaint.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,587,368

44.     CMT incorporates the foregoing paragraphs of the Complaint by reference as if fully set forth herein.

45.     The "'368 Patent Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered for sale, sold, and/or imported into the United States by or on behalf of Sfara in connection with Sfara's telematics platform.  The '368 Patent Accused Instrumentalities include, for example and without limitation, Sfara's SDK and all products and components sold by Sfara for use with Sfara's telematics platform and all services provided by Sfara in connection with its telematics platform, including but not limited to Sfara Quest (also known as "Brainy Tester"), Sfara Guardian Personal Safety, Sfara Fleet Companion, and Companion Mobile Safety.

46.     The filing of this Complaint constitutes notice to Sfara of infringement of the '368 patent.  From at least such time, Sfara should understand the allegations of direct and indirect infringement against it, involving its acts and those of its customers, know that it and its customers' acts constitute infringement and specifically intended that the users infringe said patents

47.     Sfara infringes one or more claims of the '368 patent, including without limitation claims 1-7, 9-13, and 16-20 of the '368 patent in violation of 35 U.S.C. Section 271(a), literally or

under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the '368 Patent Accused Instrumentalities and/or components thereof.  **Exhibit 4** provides an infringement claim chart detailing how the '368 Patent Accused Instrumentalities infringe the asserted claims of the '368 patent.

48.     At least as of the filing of this Complaint, Sfara, without authority and with knowledge of the '368 patent, is actively inducing infringement of at least claims 1-7, 9-13, and 16-20 of the '368 patent under 35 U.S.C. Section 271(b) by, without limitation, making and selling the '368 Patent Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including Sfara's customers and end users that purchase and/or incorporate the '368 Patent Accused Instrumentalities, for example through the Sfara website, manuals, and videos, to use the '368 Patent Accused Instrumentalities in the United States in a manner that infringes the asserted claims of the '368 patent including as described in **Exhibit 4**. Such conduct on Sfara's part intentionally encourages, urges, aids and abets, and induces its customers and end users to commit infringing acts.  Since at least the filing of the complaint, Sfara, with the knowledge and intent or willful blindness to the fact that doing so would result in the infringement of the asserted claims of the '368 patent by those customers and end users and/or in their performing each step or of one or more methods recited in those claims, provides this instruction and encouragement to its actual and prospective customers and end users.  One or more of Sfara's customers and end users of the '368 Patent Accused Instrumentalities have directly infringed and continue to directly infringe the '368 patent by using the '368 Patent Accused Instrumentalities in accordance with Sfara's instructions and encouragement, an example of which is set forth in the claim chart attached as **Exhibit 4** and incorporated herein by reference.

49.     At least as of the filing of this Complaint, Sfara has contributed to the infringement of one or more claims of the '368 patent, including without limitation claims 1-7, 9-13, and 16-20 of the '368 patent, pursuant to 35 U.S.C. Section 271(c) by importing selling, and/or offering for sale the '368 Patent Accused Instrumentalities, or has others perform such acts on its behalf, specifically so that the '368 Patent Accused Instrumentalities will be used in an infringing manner by others, including use as described herein, by Sfara's customers and end users.  Further, the '368 Patent Accused Instrumentalities were designed specifically to be used in a manner that infringes the asserted claims of the '368 patent.  For example, and without limitation, Sfara's Apps and Sfara's SDK are material components of the claimed inventions.  When Sfara's Apps and Sfara's SDK components are used, the claims of the '368 patent are infringed, as described for one example in **Exhibit 4**.  Moreover, as shown by Sfara's website, in which no non-infringing use of the Sfara Apps and Sfara's SDK is described, there is no other substantial use for the Sfara Apps and Sfara's SDK.  Thus, the Sfara Apps and Sfara's SDK are material parts of the claimed inventions of the '368 patent that, when used, result in infringement.  As a result of Sfara's selling, and/or offering for sale of the '368 Patent Accused Instrumentalities to other entities, the other entities use these products for their intended purpose and according to their instructions with the result that such entities, such as Sfara's customers and users of the '368 Patent Accused Instrumentalities, directly infringe the asserted claims of the '368 patent, literally or under the doctrine of equivalents, for the reasons stated above and in **Exhibit 4**.  Sfara's applications and platforms are specially made and adapted for this use in an infringing manner, are not a staple article of commerce, and do not have substantial non-infringing uses.

50.     At least as of the filing of this Complaint, Sfara is willfully infringing one or more claims of the '368 patent, including without limitation claims 1-7, 9-13, and 16-20 of the '368

patent in violation of 35 U.S.C. Section 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the '368 Patent Accused Instrumentalities and/or components thereof.  **Exhibit 4** provides an infringement claim chart detailing how '368 Patent Accused Instrumentalities infringe claims 1-7, 9-13, and 16-20 of the '368 patent.

51.     Sfara acted with willful blindness to the existence of the '368 patent and the infringement of the '368 patent as described above by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers.  Sfara should have known or was willfully blind to the existence of the '368 patent by no later than the filing of the Complaint, for the reasons described above.

52.     Sfara's continued infringement since at least the filing of this action is willful and deliberate, entitling Plaintiff to increased damages under 35 U.S.C. Section 284.

53.     Sfara's continued infringement since at least the filing of this action without a good faith basis to believe that such conduct is not infringing, renders this an extraordinary case under 35 U.S.C. Section 285, which entitles CMT to an award of reasonable attorneys' fees

54.     Sfara was made aware of the '368 patent and its infringement thereof at least as early as the filing of this Complaint.

55.     CMT has suffered and will continue to suffer damages as a result of Sfara's direct and indirect infringement of the '368 patent.

56.     Unless Sfara is enjoined from infringing the '368 patent, Plaintiff CMT will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,246,037

57.    CMT incorporates the foregoing paragraphs of the Complaint by reference as if fully set forth herein.

58.    The "'037 Patent Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered for sale, sold, and/or imported into the United States by or on behalf of Sfara in connection with Sfara's telematics platform.  The '037 Patent Accused Instrumentalities include, for example and without limitation, Sfara's SDK and all products and components sold by Sfara for use with Sfara's telematics platform and all services provided by Sfara in connection with its telematics platform, including but not limited to Sfara Quest (also known as "Brainy Tester"), Sfara Guardian Personal Safety, Sfara Fleet Companion, and Companion Mobile Safety.

59.    The filing of this Complaint constitutes notice to Sfara of infringement of the '037 patent.  From at least such time, Sfara should understand the allegations of direct and indirect infringement against it, involving its acts and those of its customers, know that it and its customers' acts constitute infringement and specifically intended that the users infringe said patents.

60.    Sfara infringes one or more claims of the '037 patent, including without limitation claims 1-3, 5-6, and 9-27 of the '037 patent in violation of 35 U.S.C. Section 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the '037 Patent Accused Instrumentalities and/or components thereof.  **Exhibit 5** provides an infringement claim chart detailing how the '037 Patent Accused Instrumentalities infringe the asserted claims of the '037 patent.

61.    At least as of the filing of this Complaint, Sfara, without authority and with knowledge of the '037 patent, is actively inducing infringement of at least claims 1-3, 5-6, and 9-

27 of the '037 patent under 35 U.S.C. Section 271(b) by, without limitation, making and selling the '037 Patent Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including Sfara's customers and end users that purchase and/or incorporate the '037 Patent Accused Instrumentalities, for example through the Sfara website, manuals, and videos, to use the '037 Patent Accused Instrumentalities in the United States in a manner that infringes the asserted claims of the '037 patent including as described in **Exhibit 5**. Such conduct on Sfara's part intentionally encourages, urges, aids and abets, and induces its customers and end users to commit infringing acts. Since at least the filing of the complaint, Sfara, with the knowledge and intent or willful blindness to the fact that doing so would result in the infringement of the asserted claims of the '037 patent by those customers and end users and/or in their performing each step or of one or more methods recited in those claims, provides this instruction and encouragement to its actual and prospective customers and end users. One or more of Sfara's customers and end users of the '037 Patent Accused Instrumentalities have directly infringed and continue to directly infringe the '037 patent by using the '037 Patent Accused Instrumentalities in accordance with Sfara's instructions and encouragement, an example of which is set forth in the claim chart attached as **Exhibit 5** and incorporated herein by reference.

62.     At least as of the filing of this Complaint, Sfara has contributed to the infringement of one or more claims of the '037 patent, including without limitation claims 1-3, 5-6, and 9-27 of the '037 patent, pursuant to 35 U.S.C. Section 271(c) by importing selling, and/or offering for sale the '037 Patent Accused Instrumentalities, or has others perform such acts on its behalf, specifically so that the '037 Patent Accused Instrumentalities will be used in an infringing manner by others, including use as described in **Exhibit 5** by Sfara's customers and end users. Further, the '037 Patent Accused Instrumentalities were designed specifically to be used in a manner that

infringes the asserted claims of the '037 patent.  For example, and without limitation, Sfara's Apps and Sfara's SDK are material components of the claimed inventions.  When Sfara's Apps and Sfara's SDK components are used, the claims of the '037 patent are infringed, as described for one example in **Exhibit 5**.  Moreover, as shown by Sfara's website, in which no non-infringing use of the Sfara Apps and Sfara's SDK is described, there is no other substantial use for the Sfara Apps and Sfara's SDK.  Thus, the Sfara Apps and Sfara's SDK are material parts of the claimed inventions of the '037 patent that, when used, result in infringement.  As a result of Sfara's selling, and/or offering for sale of the '037 Patent Accused Instrumentalities to other entities, the other entities use these products for their intended purpose and according to their instructions with the result that such entities, such as Sfara's customers and users of the '037 Patent Accused Instrumentalities, directly infringe the asserted claims of the '037 patent, literally or under the doctrine of equivalents, for the reasons stated above and in **Exhibit 5**.  As explained below, Sfara's applications and platforms are specially made and adapted for this use in an infringing manner, is not a staple article of commerce, and does not have substantial non-infringing uses.

63.     At least as of the filing of this Complaint, Sfara is willfully infringing one or more claims of the '037 patent, including without limitation claims 1-3, 5-6, and 9-27 of the '037 patent in violation of 35 U.S.C. Section 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the '037 Patent Accused Instrumentalities and/or components thereof.  **Exhibit 5** provides an infringement claim chart detailing how '037 Patent Accused Instrumentalities infringe claims 1-3, 5-6, and 9-27 of the '037 patent.

64.     Sfara acted with willful blindness to the existence of the '037 patent and the infringement of the '037 patent as described above by third parties, including without limitation

users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers.   Sfara should have known or was willfully blind to the existence of the '037 patent by no later than the filing of the Complaint, for the reasons described above.

65.   Sfara's continued infringement since at least the filing of this action is willful and deliberate, entitling Plaintiff to increased damages under 35 U.S.C. Section 284.

66.   Sfara's continued infringement since at least the filing of this action without a good faith basis to believe that such conduct is not infringing, renders this an extraordinary case under 35 U.S.C. Section 285, which entitles CMT to an award of reasonable attorneys' fees

67.   Sfara was made aware of the '037 patent and its infringement thereof at least as early as the filing of this Complaint.

68.   CMT has suffered and will continue to suffer damages as a result of Sfara's direct and indirect infringement of the '037 patent.

69.   Unless Sfara is enjoined from infringing the '037 patent, Plaintiff CMT will suffer irreparable injury for which damages are an inadequate remedy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff CMT respectfully requests that the Court enter the following relief in its favor and against Defendant Sfara:

A. For entry of judgment that each of the Asserted Patents have been and continue to be directly and/or indirectly infringed by Sfara, either literally or under the doctrine of equivalents;

B. For a declaration that each of the Asserted Patents is valid and enforceable;

C. For permanent injunctions enjoining the aforesaid acts of infringement by Sfara, its officers, agents, servants, employees, attorneys, parent and subsidiary entities, assigns and successors in interest, and those persons acting in concert with them, including related individuals and entities, customers, representatives, distributors, and dealers.  In the alternative, if the Court finds that an injunction is not warranted, Plaintiff CMT requests an award of post-judgment royalty to compensate for future infringement;

D. An award of all monetary relief adequate to compensate for damages resulting from Sfara's infringement, including lost profits, but in no event less than a reasonable royalty under 35 U.S.C. Section 284 for Sfara's infringement, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

E. A judgment that Sfara has willfully infringed one or more claims of the Asserted Patents;

F. A judgment awarding treble patent damages pursuant to 35 U.S.C. Section 284 as a result of Sfara's willful conduct in relation to the Asserted Patents;

**G.**     A declaration that the case is an exceptional case and that Sfara be required to pay

Plaintiff CMT's attorneys' fees pursuant to 35 U.S.C. Section 285; and

**H.**     A judgment awarding Plaintiff CMT such other and further relief as the Court

may deem just, reasonable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff CMT hereby

demands a jury trial on all issues so triable.

Date: March 10, 2023

OF COUNSEL:

To be admitted *pro hac vice*
Douglas J. Kline
Lana S. Shiferman
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
P: (617) 570-1000
F: (617) 523-1231
dkline@goodwinlaw.com
lshiferman@goodwinlaw.com

Amanda E. Stephenson
**GOODWIN PROCTER LLP**
1900 N Street NW,
Washington, DC 20036
P: (202) 346-4000
F: (202) 346-4444
astephenson@goodwinlaw.com

*/s/ Eric Abraham*
Eric Abraham, Esq. (026551995)
William P. Murtha, Esq (042872019)
**HILL WALLACK LLP**
21 Roszel Road
Princeton, New Jersey 08540
(609) 734-4447
eabraham@hillwallack.com

*Attorneys for Plaintiff*
*Cambridge Mobile Telematics, Inc.*