UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAMBRIDGE MOBILE TELMATICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SFARA, INC. <br><br> Defendant. | Civil Action No. 23-1368 (RK) (RLS) <br><br> **MEMORANDUM OPINION** |
| SFARA, INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> CAMBRIDGE MOBILE TELMATICS, INC. <br><br> Counterclaim-Defendant. | |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Plaintiff and Counterclaim-Defendant Cambridge Mobile Telematics, Inc. ("CMT"). ("MTD," ECF No. 69.) Defendant and Counterclaim-Plaintiff Sfara, Inc. ("Sfara") filed a Response in Opposition, ("Opp.," ECF No. 70), and CMT filed a Response in Support, ("Reply," ECF No. 71). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, CMT's Motion to Dismiss is **GRANTED**.

I. **BACKGROUND**[1]

CMT and Sfara are competitors in the telematics industry, and through their respective pleadings have asserted claims and counterclaims of infringement of their respective patents. The pending motion pertains to Sfara's counterclaims against CMT. Sascha Simon founded Sfara in 2012. (*Id.* ¶ 10.) Sfara has developed a technology that uses sensors in smartphones to detect crashes and trigger emergency responses. (*Id.* ¶ 10.) On March 24, 2015, the United States Patent and Trademark Office issued United States Patent No. 8,989,952 ("the '952 Patent") entitled "System and 23 Method For Detecting Vehicle Crash" to Mr. Simon. (*Id.* ¶ 29.) The '952 Patent "relates to a system and method for detecting a vehicle crash, including, inter alia, 'a communication device, e.g., a smartphone, within the vehicle at the time of the vehicle crash.'" (*Id.* ¶ 33 (quoting '952 Patent at 4:29–32).) Sfara's crash-detection products launched in 2015. (*Id.*)

On March 10, 2016, the United States Patent and Trademark Office issued another patent to Mr. Simon: United States Patent No. 9,333,946 ("the '946 Patent") entitled "System and Method for Identifying Vehicle by Utilizing Detected Magnetic Field." (*Id.* ¶ 54.) The '946 Patent relates to "an improved method and apparatus of determining the specific identity and type of vehicle a smartphone is in." (*Id.* ¶ 58 (quoting '946 Patent at 2:46–48).)

Also in the spring of 2016, a company called TrueMotion, Inc. ("TrueMotion") began evaluating a potential acquisition of Sfara. (*Id.* ¶ 16.) To aid these confidential discussions, on March 8, 2016, Sfara and TrueMotion entered into a reciprocal Non-Disclosure Agreement ("NDA"). (*Id.* ¶ 14.) In and around March and April of 2016, Sfara disclosed "confidential

---

[1] The facts in this Background section are derived from Sfara's Counterclaims, ("Counterclaims," ECF No. 12), and are accepted as true only for purposes of ruling on CMT's Motion to Dismiss.

technology, business plans, and financial information" to TrueMotion, pursuant to the NDA. (*Id.* ¶ 15.) Prior to that time, TrueMotion had developed a smartphone sensor technology to collect data on driving behavior—not to detect vehicular crashes. (*Id.*) Critical to the acquisition discussions was TrueMotion's evaluation of Sfara's cutting-edge crash detection technology. (*Id.* ¶ 16.) During this time, a large team of individuals from TrueMotion were exposed to Sfara's confidential information including Vance Loiselle (Chief Executive Officer), Brad Cordova (Chief Technology Officer), Kevin Farrell (President and Chief Product Officer), and Joe Adelmann (Co-founder and VP Operations) as well as the following individuals on information as belief: Rafi Finegold (VP Product & Experience), Scott Griffith, Jonathan McNeill, Dan Shiebler (Senior Data Scientist), and Eddie Vaisman (Data Scientist). (*Id.* ¶ 17.)

The acquisition appeared to be progressing rapidly, and on March 31, 2016, Mr. Cordova and Mr. Adelmann "toasted the relationship" with Mr. Simon. (*Id.* ¶ 18.) On or about April 11, 2016, TrueMotion required Sfara to execute an exclusivity agreement to accelerate negotiations and provide for further due diligence sessions, which the parties confirmed were subject to the NDA. (*Id.* ¶ 20.) On April 13, 2016, a due diligence meeting was conducted, during which Sfara disclosed a 73-page slide deck containing "algorithms, formulas, inputs, testing, and other technical analysis" to TrueMotion. (*Id.* ¶ 21.) Although TrueMotion and Sfara executed a letter of intent and an exclusivity agreement, they ultimately could not agree to the terms of the acquisition. (*Id.* ¶ 22.) However, on May 5, 2016, TrueMotion's CEO, Mr. Loiselle, called Mr. Simon and asked to license Sfara's technology and patents. (*Id.* ¶ 23.) He expressed disappointment that the acquisition was unsuccessful and acknowledged that, if TrueMotion were to expand into the crash-detection market, they "would need a license." (*Id.*)

However, "[d]espite not purchasing Sfara and its technology and patents, and not obtaining a license to Sfara's patents and technology, TrueMotion pushed on with product development improperly using Sfara's technology and proprietary information." (*Id.* ¶ 24.) "[A] few months later," TrueMotion went to market with crash-detection technology. (*Id.*) On September 6, 2016, TrueMotion uploaded a video to YouTube introducing its crash-detection technology. (*Id.*)

CMT, for its part, is the largest provider of driver-behavior data to insurance companies. (*Id.* ¶ 12.) Insurance companies use CMT's data "to gauge risk and set policy rates—at the beginning of the relationship with a driver." (*Id.*) On or about June 2021, CMT acquired TrueMotion, including TrueMotion's smartphone-based crash-detection platform known as TrueMotion *Impact*. (*Id.* ¶¶ 5, 13.) Many of the TrueMotion employees who previously had access to Sfara's confidential information joined CMT. (*Id.* ¶ 25.) Following the 2021 acquisition, CMT "incorporated True Motion's [sic] technology into its products (which was in turn based upon Sfara's technology) and further used Sfara's confidential information as well as Sfara's patented technology to design, develop, enhance and deploy CMT products . . . ." (*Id.* ¶ 26.) According to Sfara, CMT's products infringe on the '952 and '946 Patents. (*Id.* ¶ 38.) CMT has been aware of the Patents since at least 2016 but nonetheless infringes on same by "making, using, offering to sell, selling, and/or importing into the United States products including, but not limited to, CMT's Telematics Platform" and "instructing and encouraging its customers and/or end-users to use CMT's Telematics Platform." (*Id.* ¶¶ 45–46, 64, 73–74.)

On March 10, 2023, CMT filed the present case against Sfara. ("Compl.," ECF No. 1.) According to CMT, Sfara's driving behavior and crash technology infringed on its patents: U.S. Patents Nos. 11,587,368 (the "'368 patent") and 10,246,037 (the "'037 patent"), (collectively, the "Asserted Patents"). (*Id.* ¶ 1.) On June 7, 2023, Sfara filed an Answer with Affirmative Defenses

4

and Counterclaims. In Counts I and II, Sfara alleges that it was in fact CMT that infringed upon the '952 and '946 Patents. (Counterclaims, ¶¶ 28–80.) In Count III, Sfara alleges that CMT breached the NDA by using and disseminating Sfara's confidential information without authorization for the purpose of commercializing CMT products. (*Id.* ¶¶ 81–88.) In Count IV, Sfara alleges that "[a]n actual case or controversy exists between CMT and Sfara as to whether the '368 Patent is invalid . . . ." (*Id.* ¶¶ 89–99.) In Count V, Sfara alleges that the '368 Patent is unenforceable because during the prosecution of the '368 patent, at least the named inventors Brad Cordova and Rafi Feingold were aware of Sfara's existing products and the '952 patent, which were material to the patentability of the claims of the '368 patent, and failed to disclose their knowledge of same. (*Id.* ¶¶ 100–107.) In Count VI, Sfara alleges that "[a]n actual case or controversy exists between CMT and Sfara as to whether the '037 Patent is invalid . . . .". (*Id.* ¶¶ 109–124.)

On January 10, 2024, CMT moved to dismiss Sfara's counterclaims for breach of contract (Count III) and unenforceability of the '368 Patent (Count V). (MTD.) CMT contends that Sfara's breach of contract counterclaim should be dismissed because it is barred by any applicable statute of limitations and because it otherwise fails to state a claim upon which relief can be granted. (*Id.* at 8–13.) CMT also argues that Sfara's claim that the '368 Patent is unenforceable must be dismissed for failure to comply with Rule 9's heightened pleading standard. (*Id.* at 13–17.) Sfara filed a Response in Opposition, (Opp.), and CMT replied, (Reply). The Court now turns to CMT's motion.

## II. LEGAL STANDARD

In ruling on a motion to dismiss a counterclaim, "[c]ourts use the same standard" under "Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, No. 12-155, 2012 WL 1965370, at *2 (D.N.J. 2012); *see also County of*

5

*Hudson v. Janiszewski*, 351 F. App'x 662, 667–68 (3d Cir. 2009). Thus, under Federal Rule of Civil Procedure (12)(b)(6), a court may dismiss a counterclaim for "failure to state a claim upon which relief can be granted." For a counterclaim to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a counterclaim, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018). "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a [counterclaim] suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

### III. DISCUSSION

The Court will first address Sfara's breach of contract counterclaim and then will turn to Sfara's counterclaim based on patent unenforceability.

#### A. BREACH OF CONTRACT

In Count III, Sfara alleges that CMT breached the NDA. As noted above, Sfara alleges that it entered into an NDA with TrueMotion on March 8, 2016 to facilitate discussions about TrueMotion's potential acquisition of Sfara. However, a few months after the acquisition failed, TrueMotion went to market with a product that relied on Sfara's confidential information in violation of the NDA. When CMT acquired TrueMotion in 2021, it incorporated TrueMotion's technology into its products, which was in turn based upon Sfara's technology, and continued to use Sfara's confidential information in its products.

CMT moves to dismiss this counterclaim for two reasons: (1) it is barred by the statute of

limitations, and (2) it fails to sufficiently plead what provisions of the NDA CMT violated or what confidential information was misappropriated. (MTD at 9, 10.) Sfara counters that "there are multiple and independent breaches of the provisions of the NDA," including that CMT incorporated Sfara's technology into its products when it acquired TrueMotion in 2021. (Opp. at 10.) Alternatively, Sfara argues that it "does not know – and could not have pleaded – when CMT first used or disseminated its confidential technology," something that can only be revealed in discovery. (*Id.* at 11.) With respect to CMT's failure to state a claim argument, Sfara also contends that, although it did not attach the NDA, it quoted certain language from the NDA and identified the kinds of confidential information that was shared, such as "algorithms, formulas, inputs, testing and other technical analysis" that was contained in "a 73-page slide deck." (Opp. at 5–6 (quoting Counterclaims ¶ 21).)

The Court will address CMT's statute of limitations argument first. Although it is technically an affirmative defense, when a statute of limitations bar is apparent on the face of the allegations, this defense may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The statute of limitations may be tolled by the so-called "discovery rule": "a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." *Id.* at 251 (citation omitted). The Third Circuit has explained that generally, this inquiry is best left to a jury, and when considering a motion to dismiss on statute of limitations grounds, the court should "not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Id.* It follows that courts should not dismiss a case on statute of

7

limitation grounds "where the applicability of the discovery rule is not evident on the face of the complaint but the plaintiff also does not plead facts that unequivocally show that the discovery rule does not apply." *Id.* However, a case may be dismissed on statute of limitation grounds when the plaintiff "effectively pleads herself out of court by alleging facts that are sufficient to establish" a statute of limitations defense. *Id.* (quoting *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006)).

Based on the face of Sfara's counterclaims, the Court finds that Sfara has effectively pled itself out of court, and its breach of contract claim is barred by the statute of limitations. At the outset, the Court notes that it is not clear which state's law applies to this claim. Sfara did not attach the NDA to its counterclaims, and thus the Court cannot determine whether the contract contains a choice-of-law provision. However, because both parties are Delaware corporations, CMT argues that Delaware law should apply. (MTD at 2–3.) Nonetheless, CMT contends that Sfara's breach of contract claim is barred by either Delaware or New Jersey law. (*Id.* at 2, 9 (noting that Sfara has an office in New Jersey).) Sfara does not suggest that any other state's law should apply, instead arguing that "ventur[ing] into this choice-of-law thicket" at the motion to dismiss stage is premature. (Opp. at 9 (quoting *Forestral Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 396 (3d Cir. 2010).) The Court finds that it need not engage in a choice-of-law analysis because Sfara's claims are barred under either New Jersey's six-year or Delaware's three-year statute of limitations for breach of contract claims. *See* 10 De. D. § 8106(a); N.J. Stat. Ann. § 2A:14-1.a.

In the case at bar, Sfara alleged that TrueMotion improperly used its confidential information in violation of the parties NDA in 2016 by going to market with products that incorporated Sfara's crash-detection technology. Indeed, Sfara attaches to its counterclaims a screenshot of a YouTube video dated September 6, 2016, in which TrueMotion unveiled their new

crash-detection product. While Sfara attempts to invoke the discovery rule by contending that it does not and cannot know when *CMT* first used this confidential information, it is apparent from the face of Sfara's allegations that *TrueMotion*, CMT's predecessor, used the confidential information by September 6, 2016 at the latest—well outside the statute of limitations period. *Compare Schmidt*, 770 F.3d at 252 (finding the plaintiff did not plead himself out of court because nothing in his complaint clearly suggested he had knowledge of his injury prior to the statute of limitations period) and *FastShip, LLC v. Lockheed Martin Corp.*, No. 17-2919, 2018 U.S. Dist. LEXIS 113575, *34 (D.N.J. June 25, 2018) (finding it could not determine whether allegations were time-barred when plaintiffs specifically alleged that it only learned of defendants' conduct during discovery and had no other basis for suspecting that defendants misappropriated plaintiffs' trade secrets or violated the parties' NDAs prior to that time) *with RoboticVISIONTech, Inc. v. ABB Inc.*, No. 22-1257, 2024 WL 1299691, at *3 (D. Del. Mar. 27, 2024) (granting motion to dismiss because trade secrets misappropriation claim was time-barred as plaintiff was on inquiry notice at the time defendant launched a competing product).[2]

Sfara alleges that, since acquiring TrueMotion in 2021, CMT has continued to use the confidential information that was first obtained in 2016.[3] It appears as though Sfara is attempting to invoke the continuing violation doctrine, which is another "'equitable exception to the timely filing requirement.'" *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). The doctrine provides

---

[2] To be clear, by finding Sfara's claims are barred by the statute of limitations, the Court is not faulting Sfara for "failing to affirmatively show that [it] exercised 'reasonable diligence' with respect to discovering [its] injury." *Id.* Nor is the Court "requiring [Sfara] to make a showing of reasonable diligence" or "plead around an affirmative defense." *Id.* Rather, the Court is simply reviewing Sfara's own allegations, which clearly state that Sfara had knowledge that CMT, through its predecessor TrueMotion, violated the NDA by September 6, 2016 at the latest.

[3] To the extent that Sfara is alleging that CMT's acquisition of TrueMotion in 2021 was, itself, a violation of the NDA, the Court is not persuaded.

that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period . . . ." *Id.* (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). The scope of this doctrine is narrow, and it is often applied in the context of employment discrimination cases. *Id.*; *see also Larsen v. State Employees' Ret. Sys.*, 553 F. Supp. 2d 403, 417 (M.D. Pa. 2008) ("The doctrine is a narrow exception to the statute of limitations that is frequently invoked but rarely found").

To the extent that Sfara is attempting to invoke the continuing violations doctrine, this argument fails for three reasons. First, the continuing violations doctrine "does not apply when plaintiffs are aware of the injury at the time it occurred." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003); *see also Cowell*, 263 F.3d at 295 (explaining that the doctrine is not a substitute for plaintiff's "awareness of and duty to assert his/her rights" within the statute of limitations period). Here, as noted above, Sfara's own allegations reveal its awareness of TrueMotion's alleged violation of the NDA at the time it occurred. Second the doctrine only applies when defendant's conduct is "more than the occurrence of isolated or sporadic acts." *Cowell*, 263 F.3d at 292 (quotation marks and citation omitted). By contrast, Sfara appears to explicitly allege isolated and sporadic acts: "In this case, there are multiple and independent breaches of the provisions of the NDA." (Opp. at 10.) Third, the doctrine only applies when the alleged violation is "occasioned by continual unlawful *acts*, not continual ill *effects* from an original violation." *Cowell*, 263 F.3d at 293 (emphasis added); *see also Steudtner v. Duane Reade, Inc.*, 629 F. App'x 389, 392 (3d Cir. 2015) ("[T]he mere fact that the repudiation of a contract has continuing effect does not trigger the continuing violation doctrine.") Here, Sfara appears to be alleging that the *effects* of TrueMotion's initial violation are ongoing because CMT

continues to use Sfara's confidential information that TrueMotion incorporated into its products in 2016 in violation of the NDA.

Accordingly, the Court finds that Sfara's breach of contract counterclaim is barred by the statute of limitations, and this claim is therefore dismissed.[4] Thus, the Court need not address CMT's alternative basis for dismissing Sfara's breach of contract counterclaim at this juncture.

### B.  UNENFORCEABILITY

Next the Court turns to Sfara's unenforceability of the '368 Patent counterclaim (Count V). Sfara alleges that the '368 Patent is unenforceable based on inequitable conduct because the applicants, including named inventors Mr. Cordova and Mr. Feingold, were aware of Sfara's existing products and its '952 Patent, which were material to the patentability of the '368 Patent's claims, and intentionally withheld same from the Patent Office during the prosecution of the '368 Patent. (Counterclaims ¶¶ 103–05.)

CMT argues that Sfara has failed to plead this counterclaim with particularity under Federal Rule of Civil Procedure 9. (MTD at 13.) According to CMT, Sfara has not alleged "what material information was omitted with particularity, or facts that create an inference that CMT intentionally misled the [Patent Office]." (*Id.* at 14.) Sfara counters that [p]leading inequitable conduct simply requires identifying the specifics of who, what, when, where, why, and how of the material omission before the Patent Office"—which Sfara has done here. (Opp. at 13–14.)

A patent applicant has a duty of good faith and candor in dealing with the Patent and

---

[4] In an abundance of caution, the Court will dismiss Sfara's breach of contract counterclaim without prejudice to allow Sfara the opportunity to provide more information about the scope of the NDA as it relates to CMT. Indeed, neither party addresses the fact that it was *TrueMotion*—not *CMT*—that was party to the NDA. Sfara has provided very little information about the NDA and does not address whether the contract was terminated when the parties' acquisition discussions failed. Nor does either party address whether CMT, by acquiring TrueMotion, became a party to the NDA as TrueMotion's successor-in-interest. Because it is conceivable that Sfara could bring a breach of contract claim against CMT that is disassociated from TrueMotion's 2016 violation of the NDA, the Court dismisses Sfara's claim without prejudice.

Trademark Office ("Patent Office" or "PTO"), "which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability." *McKesson Info. Solutions, Inc. v. Bridge Medical, Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007); 37 C.F.R. § 1.56. An alleged breach of this duty may give rise to the defense of inequitable conduct, which is "an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). "A claim of inequitable conduct in acquiring or maintaining a patent has two elements: [1] intent to deceive and [2] materiality of the omission / misrepresentation to the PTO." *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, 325 F.R.D. 90, 93 (D.N.J. 2018). Materiality requires that the omission or misrepresentation be "but-for" material—meaning that "because of the misrepresentation or omission, the patent at issue is not patentable." *Id.*; *see also Therasense*, 649 F.3d at 1291 ("[T]he materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."). Intent cannot merely be inferred from materiality. *Warner Chilcott Co., LLC v. Amneal Pharms.*, LLC, No. 11-5989, 2013 WL 6627694, at *3 (D.N.J. Dec. 20, 2013) (citing *Theranese*, 649 F.3d at 1290). However, "[s]ince deceit is rarely explicit, courts may infer intent from direct and circumstantial evidence." *Id.* (citing *Theranese*, 649 F.3d at 1290).

The parties agree that the relevant pleading standard for an inequitable conduct counterclaim was announced by the Federal Circuit in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009). *See Eagle View*, 325 F.R.D. at 93, 94 ("[T]his court has consistently applied the *Exergen* pleading standard to [Rule 12(b)(6)] motions relating to inequitable conduct claims in patent infringement cases." (collecting cases)); *2109971 Ontario*

*Inc. v. Best Deals Disc. Furniture LLC*, No. 22-03557, 2023 WL 3072756, at *2 (D.N.J. Apr. 25, 2023) (same). In *Exergen*, the Federal Circuit explained that inequitable conduct must be pled with particularity under Federal Rule of Civil Procedure 9(b). *Id.* at 1326; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "A pleading that simply avers [] the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Exergen*, 575 F.3d at 1326–27. Rather, the "circumstances" which must be pled with particularity include "identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [Patent Office]." *Id.* at 1327.

> The 'who' must be pled with the name of the person who withheld or misrepresented the information; the 'what' and 'where' pled by identifying the germane claims and claim terms, their connection to the withheld or false information, and what segments of the information are relevant; the 'why' pled by explaining why the information is material; and the 'how' pled by showing how the information is relevant to a PTO examiner's assessment of patentability of the claims.

*Eagle View*, 325 F.R.D. at 93 (collecting cases). While materiality must be pled with specificity, intent may be pled generally—the pleadings must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F.3d at 1327.

The Court concludes that Sfara's counterclaim does not satisfy the heightened pleading standards for an inequitable conduct claim. While Sfara may have adequately alleged the "who" element by alleging that named inventors, Mr. Cordova and Mr. Feingold, were aware of Sfara's existing products and its '952 Patent and failed to disclose same to the Patent Office, (Counterclaims ¶¶ 101, 103), the remaining "what," "where," "why," and "how" elements do not pass muster. In its unenforceability counterclaim in Count V, Sfara simply alleges that its existing

13

products and its '952 Patent "were material to the patentability of the claims of the '368 Patent." (Counterclaims ¶ 101.) This allegation is insufficient under *Exergen. See, e.g., 2109971 Ontario*, 2023 WL 3072756, at *3 (finding inequitable conduct counterclaim conclusory because defendants simply stated that the information was "material" because it related to "patentability" without any attempt to elaborate or explain).

In opposition, Sfara points the Court to the factual allegations underpinning its invalidity counterclaim in Count IV, contending that these allegations apply with equal force here.[5] In Count IV, Sfara alleges that the '952 Patent "discloses each and every element in claim 1 of CMT's '368 Patent." (*Id.* ¶ 93.) While Sfara may have identified Claim 1 as the germane claim, Sfara merely paraphrases its contents. (*Id.* ("Claim 1 of CMT's '368 Patent requires a mobile device with sensors, memory, a processor, the collection of driving data used to detect an event, and the collection of additional data to detect and report an accident.") Sfara does not plead the individual "claim terms." *Eagle View*, 325 F.R.D. at 93. Moreover, Sfara suggests that Claim 1 is not the only germane claim, but nonetheless provides no additional information about other claims of the '368 Patent which may be relevant here. (*See* Counterclaims ¶ 92 ("The '368 Asserted Claims are invalid . . . ."; ¶ 95 ("[T]hose claims are all invalid . . . .").) Thus, Sfara has not adequately alleged the "what" and "where" elements with particularity.

Nor does Sfara "identify the particular claim limitations, or combination of claim limitations" at issue or explain why they are relevant.[6] *Exergen*, 575 F.3d at 129. The Third Circuit

---

[5] The Court will consider the factual allegations underpinning Sfara's invalidity counterclaim in Count IV as Sfara alleges in Count V that it "incorporates the foregoing paragraphs of these Counterclaims by reference as if fully set forth herein." (Counterclaim ¶ 100.)

[6] For example, CMT points out the following limitation in Claim 1 of the '368 Patent, which Sfara does not address:
>    processor configured to execute the instructions to:
>    operate the plurality of sensors over a plurality of time intervals during a
>    trip in a vehicle to collect driving data;

14

has instructed that "[s]uch allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329; *see also Jackson v. NuVasive, Inc.*, 21-53, 2023 WL 5175092, at *4 (D. Del. Aug. 11, 2023), report and recommendation adopted, 21-53, 2023 WL 6387866 (D. Del. Sept. 29, 2023) ("In contravention of the Federal Circuit's instruction in *Exergen*, the counterclaim fails to identify any specific claims or claim limitation . . . let alone explain how the [] reference is relevant to those claims . . . Without this information, it is not apparent how the [] reference establishes the unpatentability of the . . . patents."); *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, No. 12-441, 2014 WL 2622240, at *1 (D. Del. June 11, 2014) ("The pleading must also show that the omitted information is not cumulative of the information already on the record by identifying the particular claim limitations that are absent from the record."). The Court thus finds that Sfara has also failed to adequately plead the "why" and "how" elements.

Sfara counters that because it has alleged that the '368 Patent is invalid due to the existence of the '952 Patent for purposes of its invalidity counterclaim in Count IV, it has necessarily demonstrated that the '952 Patent is material for purposes of Count V. (Opp. at 15.) Sfara relies on the decision in *Theranese*, in which the Federal Circuit explained that the materiality inquiry requires a court to determine whether the PTO would have allowed a claim had it been aware of

---

detect, using the driving data, a driving event that occurred during the trip;
in response to the detection of the driving event, cause the mobile device to collect additional data associated with the trip;
receive the additional data associated with the trip;
determine that a vehicle accident event occurred during the trip based on the driving data and the additional data;
and cause the display device to output an indication of the vehicle accident event.

(Reply at 10.)

the undisclosed information. 649 F.3d at 1291. The *Theranese* court explained that "[o]ften the patentability of claim will be congruent with the validity determination"—namely, if a claim is "properly invalidated in district court based on the deliberately withheld reference, then that reference is necessarily material." *Id.* at 1292. The court reasoned that this is because the standard for a finding of invalidity is "clear and convincing evidence" which is "a higher evidentiary burden" than the "preponderance of the evidence standard" used in the prosecution of patent at the Patent Office. *Id.* The Court finds that this reasoning does not apply in situations such as here, where Sfara has simply alleged that '368 Patent is invalid based on the '952 Patent—no court has found, based on clear and convincing evidence, that the '368 Patent is invalid.

Accordingly, the Court finds that Sfara has not alleged materiality with the requisite particularity. As such, it is unnecessary to determine whether Sfara has sufficiently alleged intent to deceive the Patent Office, *see 2109971 Ontario*, 2023 WL 3072756, at *3 (granting motion to dismiss based on materiality inquiry alone), and the Court will dismiss Sfara's unenforceability counterclaim without prejudice.

## **CONCLUSION**

For the reasons set forth above, CMT's Motion to Dismiss, (ECF No. 69), is **GRANTED** without prejudice. Sfara may file amended counterclaims within 30 days, which address the deficiencies identified by the Court. Failure to file amended counterclaims within 30 days will result in dismissal with prejudice. An appropriate Order accompanies this Memorandum Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: August 20, 2024