**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CAMBRIDGE MOBILE TELEMATICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SFARA, INC., <br><br> Defendant. | Civil Action No. 23-1368 (RK) (RLS) <br><br> **MEMORANDUM OPINION AND ORDER** |

**RUKHSANAH L. SINGH, United States Magistrate Judge.**

  **PRESENTLY** before the Court is a Motion by Plaintiff Cambridge Mobile Telematics, Inc. ("CMT") to Dismiss, (Doc. No. 184) ("Motion to Dismiss"), Counts III-VI of Defendant Sfara, Inc.'s ("Sfara") First Amended Counterclaims, (Doc. No. 138) ("Amended Counterclaims"). Sfara opposed the Motion to Dismiss, (Doc. No. 187), and CMT filed a reply brief, (Doc. No. 188). Pursuant to the December 10, 2024 Order, all parties have consented to the reference of this dispositive motion to the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. No. 178). The Court has fully considered the parties' written submissions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below and for good cause shown, the Court **DENIES** CMT's Motion to Dismiss.

1

I. **BACKGROUND**

As the parties are familiar with the background and procedural history of this case, the Court recites only those facts relevant to the present Motion.[1] CMT and Sfara are competitors in the driving-behavior data market and produce crash-detection technology for smartphones. (Doc. No. 138 at ¶ 12). From 2012 through 2015, Sfara developed and patented a technology that uses sensors in smartphones to detect vehicle crashes. (Doc. No. 138 at ¶ 10). In 2016, TrueMotion, Inc. ("TrueMotion") expressed an interest in acquiring Sfara to obtain its crash-detection technology. (Doc. No. 138 at ¶ 15). At that time, TrueMotion's technology used smartphone sensors to obtain driving behavior, but did not have crash detection capability. (Doc. No. 138 at ¶ 15). To facilitate discussions regarding a potential acquisition, Sfara and TrueMotion entered into a Reciprocal Nondisclosure Agreement ("NDA") dated March 8, 2016. (Doc. No. 138 at ¶ 16). The NDA obligated TrueMotion to use Sfara's confidential information solely to "discuss, review, and evaluate business, technical and financial plans to determine if a business relationship would be mutually beneficial." (Doc. No. 138 at ¶ 17). The NDA further obligated TrueMotion to hold Sfara's information "in confidence." (Doc. No. 138 at ¶ 18).

In the months following the execution of the NDA, Sfara began to share its confidential technology, business plans and financial information with TrueMotion. (Doc. No. 138 at ¶¶ 20-26). Sfara conducted numerous discussions with TrueMotion specifically regarding its crash detection technology. (Doc. No. 138 at ¶¶ 20, 24-26, 29-30). The parties affirmed in writing several times throughout that period that the information shared by Sfara was covered by the NDA.

---

[1] The facts in this Background section are derived from Sfara's Amended Counterclaims and are accepted as true for purposes of resolving the Motion to Dismiss. *See Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018).

(Doc. No. 138 at ¶ 28).  Despite promising discussions, the parties were ultimately unable to agree on terms for TrueMotion's acquisition of Sfara.  (Doc. No. 138 at ¶ 32).  Although TrueMotion did not acquire Sfara or its products, TrueMotion "pushed on" with development of its own crash detection product.  (Doc. No. 138 at ¶ 34).  On September 6, 2016, TrueMotion posted a video to its YouTube channel demonstrating its new crash detection product.  (Doc. No. 138 at ¶ 34).  Sfara was not aware of the video at the time TrueMotion posted it, nor was it aware of the technology contained in TrueMotion's new product.  (Doc. No. 138 at ¶ 34).  Over the coming years, TrueMotion continued to develop its crash detection technology using the confidential disclosure Sfara conveyed under the NDA.  (Doc. No. 138 at ¶ 35).

On August 3, 2018, TrueMotion filed its first in a series of patent applications regarding its crash detection technology.  (Doc. No. 138 at ¶ 38).  That application incorporated Sfara's confidential information which was covered by the NDA.  (Doc. No. 138 at ¶ 38).  In or around June 2021, CMT acquired TrueMotion.  (Doc. No. 138 at ¶ 13).  CMT then began to incorporate TrueMotion's crash detection technology into its own products.  (Doc. No. 138 at ¶ 37).  On February 3, 2021, CMT filed a continuation application containing that same confidential Sfara information, which matured into U.S. Patent No. 11,587,368 (the "'368 Patent").  (Doc. No. 138 at ¶ 38).  On March 10, 2023, CMT filed a complaint against Sfara for infringing on its patents, including the '368 Patent.  (*See generally* Doc. No. 1).  Sfara was unaware of TrueMotion and CMT's alleged breaches of the NDA until CMT filed its complaint.  (Doc. No. 138 at ¶¶ 103, 111, 120, 132).  Sfara also claims that it could not have reasonably known about TrueMotion and CMT's purported breaches until this lawsuit was filed.  (Doc. No. 138 at ¶¶ 103, 111, 120, 132).

In response to CMT's complaint, Sfara filed counterclaims alleging, *inter alia*, breach of contract for the violations of the NDA described above.  (*See generally* Doc. No. 12).  CMT moved

3

to dismiss those counterclaims on the basis that the claims were barred under either Delaware or New Jersey's statute of limitations and failed to specifically identify the provisions of the NDA CMT purportedly breached. (Doc. No. 69-1 at pp. 1-2). In response, Sfara argued that it specifically identified the provisions of the NDA which CMT breached. (Doc. No. 70 at pp. 3-9). Regarding the statute of limitations, Sfara argued that CMT committed numerous breaches in 2021 and that it could not have reasonably known when CMT's breaches occurred without the benefit of fact discovery. (Doc. No. 70 at pp. 9-13).

On August 20, 2024, the Court issued a Memorandum Opinion ("August 20, 2024 Order") granting CMT's motion to dismiss without prejudice. (*See generally* Doc. No. 127). The Court observed that while the applicability of the so-called "discovery rule"—which tolls the statute of limitations until the time when the complaining party reasonably should have known it has been injured—is ordinarily a question for the jury, a claimant may effectively "plead herself" out of court by alleging facts sufficient to establish a statute of limitations defense. (Doc. No. 127 at pp. 7-8). The Court found that Sfara effectively pled itself out of court under either New Jersey or Delaware law. (Doc. No. 127 at p. 8). The Court, accepting Sfara's allegations as true, concluded that TrueMotion breached the NDA no later than September 6, 2016—the date on which TrueMotion posted a YouTube video depicting its crash detection technology. (Doc. No. 127 at pp. 8-9). The Court also concluded that the continuing violations doctrine is inapplicable because the true breach of the NDA occurred sometime before September 6, 2016, and CMT's subsequent use of Sfara's confidential information was a continuing violation of that breach. (Doc. No. 127 at pp. 10-11). Finally, the Court noted that neither party addressed whether CMT became a party to the NDA as TrueMotion's successor in interest. (Doc. No. 127 at p. 11 n. 4).

4

On September 19, 2024, Sfara brought amended counterclaims which sought to address the deficiencies identified by the Court in the August 20, 2024 Opinion. (*See generally* Doc. No. 138). CMT moved to dismiss the Amended Counterclaims, arguing that Sfara failed to cure the deficiencies in the original counterclaims. (*See* Doc. No. 185 at pp. 1-2). Sfara opposed the motion, contending that the breaches alleged in the Amended Counterclaims took place in 2021 and that CMT is bound by the NDA. (*See* Doc. No. 187 at pp. 1-2). CMT replied to Sfara's opposition on January 31, 2025. (*See generally* Doc. No. 188).

## II. LEGAL STANDARD

Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint. *Jazz Pharms. Rsch. UK Ltd. v. Teva Pharms., Inc.*, 711 F. Supp. 3d 244, 249 (D.N.J. 2024). To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a claim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A counterclaim is plausible on its face when the counterclaimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making that determination, the Court must accept as true all allegations in the counterclaim, as well as the reasonable inferences that can be drawn therefrom, and view them in a light most favorable to the counterclaimant. *Tati*, 882 F.3d at 426.

## III. DISCUSSION

### A. STATUTE OF LIMITATIONS

The Court first considers whether Counts III through VI of Sfara's Amended Counterclaims are barred by the statute of limitations. "[T]he statute of limitations is not an element of a claim, but rather an affirmative defense that the defendant must plead and prove."

5

*Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 528 (D.N.J. 2017). Although the statute of limitations may provide the basis for dismissal in "a very clear case," the usual approach is to resolve such disputes at summary judgment or trial. *Id.*

As a threshold matter, the parties dispute whether New Jersey or Delaware's statute of limitations applies to Sfara's Amended Counterclaims. CMT contends that the choice-of-law provision in the NDA, which provides that the agreement is governed by Delaware law, applies to the statute of limitations. (*See* Doc. No. 185 at pp. 6-7; *see also* Doc. No. 138-3, Exhibit 3). In response, Sfara argues that New Jersey's statute of limitations applies because the state has a substantial interest in the case. (*See* Doc. No. 187 at pp. 9-13). Under Delaware law, the statute of limitations for a breach of contract claim is three years, which accrues at the time the breach occurs. *Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247, 251-52 (D. Del. 1990). Under New Jersey law, the statute of limitations for a breach of contract claim is six years, which begins to run when the party bringing the claim has an enforceable right. N.J.S.A. 2A:14-1.6; *Metromedia Co. v. Hartz Mountain Assocs.*, 655 A.2d 1379, 1381 (N.J. 1995). The Court need not decide which state's statute of limitations applies at this juncture.

The Court's prior determination that the initial breach in this matter occurred no later than September 6, 2016 remains unchanged. (*See* Doc. No. 127 at pp. 8-9). The Court made that ruling based on Sfara's allegation that TrueMotion improperly used Sfara's confidential information to launch its own crash detection product, which TrueMotion announced to the public through a September 6, 2016 YouTube video. (*See* Doc. No. 127 at pp. 8-9). Sfara makes identical allegations regarding TrueMotion's use of its confidential information to launch its own crash detection product in the Amended Counterclaims. (*Compare* Doc. No. 12 at ¶ 24 *with* Doc. No. 138 at ¶ 34). Accepting Sfara's allegations as true, TrueMotion first improperly used Sfara's

6

confidential information in violation of the NDA no later than September 6, 2016, and the ill effects of that improper use persisted through CMT's acquisition of TrueMotion. (*See* Doc. No. 138 at ¶¶ 34-39). Nothing in the Amended Counterclaims affects the Court's prior ruling.

Having determined that Sfara's breach of contract claims accrued no later than September 6, 2016, a date well outside the statute of limitations period under either New Jersey or Delaware law, the Court next considers whether any applicable doctrine tolled the statutory period. Both New Jersey and Delaware recognize some variation of the so-called "discovery rule." Under New Jersey law, "the accrual of a cause of action is delayed, in appropriate circumstances, until the injured party actually discovers, or by the existence of reasonable diligence and intelligence reasonably should have discovered, that he may have a basis for an actionable claim." *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 479 (D.N.J. 2002). Similarly, Delaware law recognizes an "inherently unknowable injury" doctrine, which tolls the statute of limitations "where it would be practically impossible for a plaintiff to discover the existence of a cause of action and the claimant is blamelessly ignorant of the wrongful act and the injury complained of." *Weyerhaeuser Co. v. Domtar Corp.*, 61 F. Supp. 3d 445, 451-52 (D. Del. 2014) (internal quotation marks and citation omitted). In a case where the doctrine applies, the statute of limitations is tolled only until there exists a set of facts sufficient to place a person of ordinary intelligence and prudence on notice which, if pursued, would lead to discovery of the injury. *White v. Irwin*, 114 F. Supp. 3d 174, 185 (D. Del. 2015); *see also Weyerhaeuser*, 61 F. Supp. 3d at 452.

Here, Sfara alleges that it was unaware of TrueMotion's crash detection technology at the time TrueMotion posted its YouTube video and for many years thereafter. (Doc. No. 138 at ¶ 34). Sfara also alleges that it could not have reasonably known about TrueMotion or CMT's purported breaches until CMT filed this lawsuit. (*See* Doc. No. 138 at ¶¶ 103, 111, 120, 130). In evaluating

7

CMT's motion to dismiss, the Court is required to accept those allegations and the reasonable inferences to be drawn from them as true and construe the counterclaims in a light most favorable to Sfara. *Tatis*, 882 F.3d at 426. In light of that standard, the Court finds that Sfara has sufficiently pled that it may be able to invoke New Jersey's discovery rule or Delaware's inherently unknowable injury doctrine in this litigation. Whether Sfara should have known of the alleged breach is a fact sensitive inquiry which is not ripe for determination on this Motion to Dismiss. In light of the amendments to the Counterclaims, the Court will not dismiss the Amended Counterclaims on a statute of limitations defense at this time.

### B. CMT'S RELATIONSHIP TO THE NDA

The Court next turns to whether Sfara has adequately pled liability against CMT itself. In its August 20, 2024 Order, the Court noted that neither party addressed whether CMT became a party to the NDA through its acquisition of TrueMotion or whether CMT is liable as TrueMotion's successor in interest. (*See* Doc. No. 127 at p. 11 n. 4). Sfara's Amended Counterclaims now contain the following allegation: "Neither party terminated the contract. In fact, the contract remained in effect through CMT's acquisition of TrueMotion on June 16, 2021." (Doc. No. 138 at ¶¶ 100, 108, 117, 126). The question for the Court is whether that allegation makes it plausible that CMT is bound by the NDA and may be liable for TrueMotion's purported breaches of same.

Through the instant Motion, CMT contends that Sfara failed to plead that a contract exists between CMT and Sfara. (Doc. No. 185 at pp. 11-12). CMT highlights the provision of the NDA which states that "[n]either party shall assign its rights or obligations under this Agreement without the prior written consent of the other party." (Doc. No. 185 at p. 12 (quoting Doc. No. 138-3, Exhibit 3)). Sfara opposes that contention and points to language in the NDA which states that with respect to any proprietary information shared under the agreement, "each party's obligations

of confidentiality set forth herein shall survive termination of this Agreement and shall survive any transfer of rights or obligations under this Agreement." (Doc. No. 187 at pp. 24-25 (quoting Doc. No. 138-3, Exhibit 3)). Sfara also contends that under Delaware law, CMT became liable for the debts, liabilities and duties of TrueMotion following the acquisition. (Doc. No. 187 at p. 24-25 (quoting DEL. CODE ANN. tit. 8, § 259(a) (2024))). In reply, CMT argues that successor liability is not a "foregone conclusion," citing Delaware law for the proposition that contractual obligations do not pass to a successor if the objective language of that contract contemplated that the obligations would not pass. (Doc. No. 188 at pp. 11-12).

The NDA states that it is governed by Delaware law. (Doc. No. 138-3, Exhibit 3). Under Delaware law, following a merger or consolidation, the debts, liabilities and duties of the constituent corporations attach to the surviving corporation. DEL. CODE ANN. tit. 8, § 259(a) (2024). That statute clearly expresses Delaware's public policy that "the obligations of the extinguished corporation in a merger survive as obligations of the surviving corporation." *W. Air Lines, Inc. v. Allegheny Airlines, Inc.*, 313 A.2d 145, 154 (Del. Ch. 1973). In fact, "the policy of the law is so clear that survival should be taken as the normal course of events." *Id.* Given that public policy, coupled with the provision in the NDA which states that each party's confidentiality obligations survive any transfer of rights or termination of the agreement, the Court finds, at this stage, that Sfara has adequately pled that CMT may be bound by the NDA and may be liable for TrueMotion's alleged breaches of same. The Court agrees with CMT that successor liability "is not a foregone conclusion." (Doc. No. 188 at p. 11). However, at this stage, Sfara's claim that the contract survived CMT's acquisition of TrueMotion, coupled with the language from the NDA, sufficiently supports a plausible claim of breach of contract against CMT.

### C. PUBLICATION CLAIM

Lastly, the Court considers CMT's argument that Count V of Sfara's Amended Counterclaims fails to plausibly plead a cause of action. Count V of Sfara's Amended Counterclaims alleges that TrueMotion violated the NDA by publishing its confidential information on August 6, 2021 through a patent application for the '368 Patent. (Doc. No. 138 at ¶ 118). CMT argues that Sfara's claim is not plausible because Sfara—according to its allegations—disclosed its own supposedly confidential information in March 2015 through U.S. Patent No. 8,989, 952 ("the '952 Patent"). (Doc. No. 185 at p. 13). CMT contends that once the '952 Patent was published, Sfara's information ceased to be confidential, and CMT's alleged disclosure of that information cannot form the basis of a cognizable breach of the NDA. (Doc. No. 185 at p. 13). In response, Sfara argues that the claims asserted in the '952 Patent do not disclose Sfara's confidential information and that the question of whether Sfara previously disclosed its confidential information is fact sensitive and inappropriate for resolution on a motion to dismiss. (Doc. No. 187 at pp. 25-27).

Indeed, if Sfara published its own allegedly confidential information, it cannot maintain an action against CMT for disclosing already public information. "It is well established that once confidential information has been published, it is no longer confidential." *Janssen Prods., L.P. v. Lupin Ltd.*, No. 10-05954, 2014 WL 956086, at *3 (D.N.J. Mar. 12, 2024). Whether a party adequately protected the secrecy of its own confidential information is a fact-sensitive inquiry. *Merckle GmbH v. Johnson & Johnson*, 961 F. Supp. 721, 731 (D.N.J. 1997). CMT argues that, accepting Sfara's allegations as true, Sfara has publicized its own confidential information and therefore cannot sustain a claim for breach of the NDA. The Court is not persuaded. Although Sfara *may* have published some of its own allegedly confidential information through the '952

10

Patent, Sfara has not alleged that *all* of the allegedly confidential information was previously made public. (*See* Doc. No. 138 at ¶¶ 144-53; *see also* Doc. No. 185 at p. 19 (CMT stating "*certain information in the '368 Patent was previously publicly disclosed in Sfara's '952 Patent*") (emphasis supplied)). Accepting as true Sfara's pleading, it is plausible that Sfara did not previously make public some of the claimed confidential information in the '368 Patent. Construing the pleadings in a light most favorable to the claimant, the Court finds that Sfara has plausibly pled an alleged breach of the NDA by publishing Sfara's confidential information in the '368 Patent.

## IV.   CONCLUSION

For the foregoing reasons, and for other good cause shown, the Court denies CMT's Motion to Dismiss Sfara's Amended Counterclaims. Accordingly, having considered the parties' submissions, and for the reasons set forth herein and for other good cause shown,

**IT IS, THEREFORE**, on this **2d** day of **July 2025**,

**ORDERED** that CMT's Motion to Dismiss (Doc. No. 184) is hereby **DENIED**; and it is further

**ORDERED** that the Clerk of the Court is hereby directed to **TERMINATE** the Motion pending at Docket Entry Number 184.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**